IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                     No. CR 13-0431 RB

MANUEL PAULINO ALVAREZ-VALDEZ,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Manuel Paulino Alvarez-Valdez's Motion for a New Trial. (Doc. 60). Defendant contends that a new trial is warranted because the prosecutor made improper arguments in summation to which Defendant did not object contemporaneously. (Doc. 60). Plaintiff opposes the motion. (Doc. 61). Having carefully considered the submissions of counsel, and relevant law, the Court denies the motion.

### I.   Background

On November 20, 2012, Defendant drove a white Chevrolet pickup truck loaded with approximately 189.9 kilograms (approximately 418 pounds) of marijuana into the Santa Teresa, New Mexico, Port of Entry. (Doc. 1). The marijuana was concealed in compartments under the bed and passenger compartment of the truck. (*Id.*) Defendant was arrested and charged with: (1) importation of marijuana and aiding and abetting; and (2) possession with intent to distribute 100 kilograms and more of marijuana and aiding and abetting. (Doc. 10). After a two-day jury trial, Defendant was convicted on both counts. (Docs. 28 & 50).

Defendant contends that he is entitled to a new trial because the prosecutor in summation (1) appealed to racial, ethnic, or class prejudice; (2) argued facts not in evidence and

misrepresented the evidence; (3) misrepresented the law; (4) denigrated the defense; (5) asserted his personal belief in Defendant's guilt; (6) improperly characterized and minimized the jury's role; and (7) undermined the fundamental fairness of the trial. Plaintiff opposes the motion.

**II.     Standards**

Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CIV. P. 33(a). "A motion for a new trial is not regarded with favor and is only issued with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269-70 (10th Cir. 2007) (citing *United States v. Trujillo,* 136 F.3d 1388, 1394 (10th Cir. 1998)). The decision whether to grant a motion for a new trial is committed to the sound discretion of the trial court. *United States v. Stevens,* 978 F.2d 565, 570 (10th Cir. 1992).

Where, as here, a defendant did not object to alleged prosecutorial misconduct at trial, review is limited to plain error. *United States v. Anaya*, ___ F.3d ___, 2013 WL 4308093 (10th Cir. Aug. 16, 2013) (citing *United States v. Dazey*, 403 F.3d 1147, 1170 (10th Cir. 2005); *United States v. Caballero*, 277 F.3d 1235, 1244 (10th Cir. 2002); *United States v. Gonzalez-Montoya*, 161 F.3d 643, 650 (10th Cir. 1998); *United States v. May*, 52 F.3d 885, 887 (10th Cir. 1995)). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Fleming*, 667 F.3d 1098, 1103 (10th Cir. 2011) (citing *United States v. Taylor*, 514 F.3d 1092, 1100 (10th Cir. 2008)).

Accordingly, in assessing Defendant's claim of prosecutorial misconduct, "the main issue to be decided is not the appropriateness of the prosecutor's comments but, rather, whether the comments constitute misconduct rising to the level of plain error." *United States v. Franklin-El*,

555 F.3d 1115, 1124 (10th Cir. 2009). "This distinction is important because the line between proper and improper advocacy is inexact and even improper conduct does not in all cases warrant reversal of a conviction." *Id.* at 1124-25 (citing *United States v. Young*, 470 U.S. 1, 7 (1985)). The remarks of the prosecutor must be viewed in the context of the entire trial because "only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Lopez-Medina*, 596 F.3d 716, 738 (10th Cir. 2010) (internal quotation omitted).

The Tenth Circuit has emphasized that a new trial is warranted only when: (1) the prosecutor's statement is plainly improper and (2) the defendant demonstrates that the improper statement affected his substantial rights. *See United States v. Rogers,* 556 F.3d 1130, 1141 (10th Cir. 2009). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutor's conduct." *Wilson v. Sirmons*, 536 F.3d 1064, 1117 (10th Cir. 2008) (quotations omitted). "A prosecutor's improper statement to the jury is harmless unless there is reason to believe that it influenced the jury's verdict." *United States v. Gabaldon*, 91 F.3d 91, 94 (10th Cir. 1996). It bears underscoring that to warrant a new trial, "the misconduct must have been flagrant enough to influence the jury to convict on grounds other than the evidence presented." *Id.* (quotation omitted).

### III.   Discussion

#### A.   The prosecutor did not appeal to ethic, racial, or class prejudice.

Defendant contends the prosecutor appealed to ethnic or racial prejudice when he argued "folks with border-crossing cards in Juarez are always susceptible to the temptation of easy money for running a load across the border." (Tr. III at 5). Additionally, Defendant contends the prosecutor appealed to class prejudice when he pointed out that Defendant had a large family

3

and made $24,000 per year. (Tr. III at 46-47). Consideration of these remarks in the context of the entire trial leads to the conclusion that they did not influence the jury's verdict.

Defendant was apprehended at the border driving a vehicle containing over four hundred pounds of marijuana hidden in custom compartments. He was charged with importation and possession of marijuana. The key issue at trial was Defendant's knowledge of the concealed marijuana. The trial evidence strongly supported the jury's finding that Defendant had knowledge of the concealed marijuana.

Homeland Security Investigations Special Agent Sean Vasquez testified that Defendant told him four different versions of the story of how he came to be driving the truck across the border that day, culminating with an admission that "he just closed his eyes and drove the truck." (Doc. 57, Tr. at 159-163). Drug Enforcement Administration Special Agent Magnus Lundvall testified that people get involved in drug trafficking for monetary gain. (Tr. I at 223). Agent Lundvall testified that drivers get paid anywhere from $2,000 to $5,000 to drive a load of drugs from Mexico into the United States. (Tr. II at 4). Defendant was in possession of approximately $2,726 at the time he was apprehended. (Tr. II at 100). Defendant was a used car dealer who lived in Ciudad Juarez. He had a border crossing card and he regularly crossed the international border to operate his car business. Defendant testified that he had six kids and his account at the auto auction was suspended. (Tr. II at 121-123, 139-42).

In referencing the border crossing card and Defendant's financial status during his closing argument, the prosecutor reminded the jury that Defendant had the ability to drive the marijuana across the border as well as the motive to make extra money. These factors rebutted Defendant's theory of the case that he lacked knowledge of the marijuana. *See Franklin-El*, 555 F.3d at 1126 (finding it relevant in the context of a prosecutorial misconduct claim that many of

4

the prosecutor's comments were responsive to defense arguments). In any event, the prosecutor's statements "would have been perceived only as commentary on the implausibility of the defendant's story." *United States v. Robinson*, 978 F.2d 1554, 1567 (10th Cir.1992) (quotation omitted). Given the evidence in the case, the prosecutor's arguments were responsive to Defendant's claim that he lacked knowledge of the marijuana. Even if the remarks were inappropriate, they did not reach the level of plain error, as they did not compromise the fairness of the trial. *See Lopez-Medina*, 596 F.3d at 738; *Rogers*, 556 F.3d at 1141; *Wilson*, 536 F.3d at 1117.

**B.  The prosecutor did not argue facts not in evidence or misrepresent the evidence.**

Defendant claims that the prosecutor argued facts not in evidence and misrepresented the evidence when he argued that: (1) drug organizations do not entrust large loads of drugs to blind mules; (2) a drug organization intended to use the truck repeatedly; (3) a drug organization recruited Defendant; (4) this is a "routine-type case"; (5) Defendant's explanation for how the truck was financed was implausible; and (6) Defendant paid a high price for the truck. These arguments are unavailing.

It is well-established that a prosecutor may draw reasonable inferences from evidence presented at trial. *See Thornburg v. Mullin*, 422 F.3d 1113, 1131 (10th Cir. 2005); *Moore v. Gibson*, 195 F.3d 1152, 1172 (10th Cir.1999); *Duvall v. Reynolds*, 139 F.3d 768, 795 (10th Cir. 1998). Additionally, the prosecutor properly may comment on the circumstances of the crime made known to the jury during trial. *See Hooper v. Mullin*, 314 F.3d 1162, 1172 (10th Cir. 2002); *Clayton v. Gibson*, 199 F.3d 1162, 1174 (10th Cir. 1999). Consideration of the following evidence confirms that the prosecutor's closing arguments constituted fair comment on the evidence adduced at trial.

Defendant was apprehended driving a truck concealing over 400 pounds of marijuana. (Tr. I at 57, 126). Agent Lundvall testified that this quantity of marijuana was worth approximately $104,500 to $125,400 in the border area, and approximately $209,000 to $418,000 in Chicago, Illinois. (Tr. I at 220-21). Agent Lundvall testified that the photographs of the truck indicated a sophisticated drug trafficking organization was involved, and that such organizations run like a business and exercise control over their merchandise at all times. (Tr. I at 222-223; Tr. II at 4-5). Agent Lundvall testified that drug trafficking operations include "the people who recruit the drivers." (Tr. I at 223). More specifically, Agent Lundvall described the recruitment process as follows: "They can be approached anywhere . . . in the United States, in Mexico, and asked to drive a load of marijuana and offered money to do so." (Tr. I at 224). Agent Lundvall testified that this type of case is "fairly common." (Tr. I at 221). However, Agent Lundvall explained that "blind mules" i.e., persons who unknowingly transport drugs into the United States, are not common. (Tr. I at 224; II at 4). As the prosecutor's statements were based on the trial testimony, the prosecutor did not misrepresent the evidence.

Evidence at trial supported the inferences that Defendant's explanation for how the truck was financed was implausible and Defendant paid a high price for the truck. Defendant testified he paid $1,000 to Agustin Gonzales, a Ciudad Juarez used car dealer, as a down payment on the $3,500 purchase price of the truck, the truck stayed on Gonzales's lot unless Defendant borrowed it, and Gonzales could sell the truck at any time. (Tr. II at 55-56). This is a particularly odd financing arrangement, especially considering that the Defendant is a seasoned used car salesman. The high purchase price was also odd. Defendant testified that he sold vehicles for $300 to $500 over what he had invested, yet he paid the Juarez dealer full market value of $3,500 for the 1998 Chevy pickup truck. (Tr. II at 143-44). Commonsense dictates that a used car

6

dealer should pay less than full retail. It was, therefore, not improper for the prosecutor to characterize the deal as inherently implausible. Moreover, Defendant gave multiple inconsistent statements about how he came by the truck. There was certainly nothing improper about the prosecutor bringing these discrepancies to the jury's attention.

Defendant argues the prosecutor misstated the evidence by arguing that Defendant's prior border crossing in the truck was to run the plates through Customs. According to Agent Vazquez's testimony, it was significant that Defendant had driven the truck across the border once before the time he was caught because "individuals will cross a vehicle one time to do what is called 'burning a plate,' which is to show that a vehicle has crossed into the United States and made it successfully. So once it crosses the port of entry again, inspectors at the port of entry will see that this vehicle has a crossing history and it has crossed before without incident." (Tr. I at 168-169). Because the prosecutor properly inferred his argument from this testimony, he neither misstated the evidence nor argued facts not in evidence. Even if the prosecutor's remarks could be construed as improper, they did not reach the level of plain error as they did not compromise the fairness of the trial. *See Lopez-Medina*, 596 F.3d at 738; *Rogers*, 556 F.3d at 1141; *Wilson*, 536 F.3d at 1117.

        **C.**        **The prosecutor did not misrepresent the evidence and law on forfeiture.**

Defendant asserts that the prosecutor misstated the law on forfeiture and the evidence regarding the Government's decision not to forfeit the cash Defendant carried at the time of his arrest. Defense counsel argued in closing that the Government's decision showed that Defendant was innocent. In rebuttal, the prosecutor pointed out that the Government declined to forfeit the cash because Defendant declared it at the border and said the money belonged to someone else. (Tr. III at 49). Defendant testified that the $2,726 in cash he carried when he was apprehended

belonged to his client from Ciudad Juarez. (Tr. II at 100; 105). The money was confiscated but returned to Defendant. (Tr. II at 107). This testimony is consistent with what the prosecutor said in rebuttal to Defendant's assertion that the Government's decision not to forfeit the money somehow proved that Defendant was innocent.

The prosecutor's comment that the cash might have been payment for running the marijuana was also consistent with the evidence. Agent Lundvall testified that drivers get paid anywhere from $2,000 to $5,000 to drive a load of drugs from Mexico into the United States. (Tr. II at 4). Defendant was in possession of approximately $2,726 at the time he was apprehended. (Tr. II at 100). The prosecutor properly pointed out that the cash might have been payment for services rendered. Because reasonable inferences drawn from Defendant's testimony support the prosecutor's remarks, the prosecutor did not misstate the evidence or law on forfeiture. Even if the prosecutor's remarks were found to be improper, they did not reach the level of plain error as they did not compromise the fairness of the trial. *See Lopez-Medina*, 596 F.3d at 738; *Rogers*, 556 F.3d at 1141; *Wilson*, 536 F.3d at 1117.

### D. The prosecutor committed a mathematical error.

Defendant points out that the prosecutor erroneously stated on rebuttal that Defendant had to sell eight vehicles per month, at a profit of $500 per vehicle, to make $24,000 per year. Defendant testified that his annual income was approximately $24,000, and he cleared $300 to $500 per vehicle. (Tr. II at 141-143). As this equates to an average of about five vehicles per month, the prosecutor committed an arithmetic error when he opined that Defendant "would have had to sell, what is that, eight cars a month?" (Tr. III at 49). However, this mathematical error was harmless. The prosecutor posed this statement as a question and the jurors were capable of doing the calculation themselves. The prosecutor's mathematical mistake does not

render the trial fundamentally unfair. *See Lopez-Medina*, 596 F.3d at 738; *Rogers*, 556 F.3d at 1141; *Wilson*, 536 F.3d at 1117.

### E. The prosecutor did not denigrate the defense.

Defendant contends that the prosecutor denigrated the defense by stating: "[W]ell, how did those drugs get into the defendant's truck? It wasn't the marijuana fairy tapping his vehicle." (Tr. III at 12). Based on Defendant's denial of knowledge and the overwhelming evidence to the contrary, it was fair for the prosecutor to suggest that the Defendant's explanation was not worthy of belief. A prosecutor has a duty to make the government's case. Drawing the jury's attention to the improbability of a defendant's story is part and parcel of trial advocacy. In any event, this argument did not render the trial fundamentally unfair. *See Lopez-Medina*, 596 F.3d at 738; *Rogers*, 556 F.3d at 1141; *Wilson*, 536 F.3d at 1117.

### F. The prosecutor did not assert his personal belief in Defendant's guilt

Defendant's assertion that the prosecutor repeatedly told the jury that he personally believed Defendant was guilty is not supported by the record, as the prosecutor did not state that he personally believed Defendant was guilty. While the closing arguments were forceful, they did not render the trial fundamentally unfair. *See Lopez-Medina*, 596 F.3d at 738; *Rogers*, 556 F.3d at 1141; *Wilson*, 536 F.3d at 1117.

### G. The prosecutor did not improperly characterize and minimize the jury's role.

Defendant claims the prosecutor improperly characterized and minimized the jury's role by telling the jury "[y]ou've got to trust the judge" and "[i]t's now your duty to deliberate and to convict this man . . . on all charges." (Tr. III at 51-52). The prosecutor's statement referred to the judge's duty to instruct the jury on the law. As the jury instructions explained the jury's role, any improper characterization of the jury's role by the prosecutor was harmless and did not

render the trial fundamentally unfair. *See Lopez-Medina*, 596 F.3d at 738; *Rogers*, 556 F.3d at 1141; *Wilson*, 536 F.3d at 1117.

### H. The prosecutor's closing arguments were not plain error.

The prosecutor's closing arguments were not plainly improper, nor did Defendant demonstrate that they compromised the fairness of the trial. *See United States v. Rogers*, 556 F.3d at 1141; *Lopez-Medina*, 596 F.3d at 738. Defendant has not satisfied his burden of demonstrating that the prosecutor's remarks violated his substantial rights. Simply put, the prosecutor's closing arguments did not affect the fundamental ability of the jury to fairly judge the evidence.

**THEREFORE,**

**IT IS ORDERED** that Defendant Manuel Paulino Alvarez-Valdez's Motion for a New Trial is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**